**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

GHISLAINE PIERRE,

            Plaintiff,

      v.

PLANET AUTOMOTIVE, INC., d/b/a
KG SUZUKI and AMERICAN SUZUKI
FINANCIAL SERVICES,

            Defendants.

**Index No.: 13-cv-675**

Hon. Margo K. Brodie
Hon. James Orenstein

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AMERICAN SUZUKI FINANCIAL SERVICES MOTION FOR SUMMARY JUDGMENT**

November 21, 2014

Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
*Attorneys for Plaintiff*
343 Manville Road
Pleasantville, NY 10570
T. (914) 946-1981, ext. 101
F. (914) 946-2930
daniel.schlanger@schlangerlegal.com

## I.     PRELIMINARY STATEMENT

Plaintiff Ghislaine Pierre, by and through her attorneys, Schlanger & Schlanger, LLP, respectfully submits this Memorandum of Law in opposition to Defendant American Suzuki Financial Services' (ASFS) motion for summary judgment.

ASFS is the assignee of the Retail Installment Contract (RIC) and loan obligation originated at Defendant Planet Automotive in May 2012. Plaintiff has alleged a wide variety of misconduct related to the underlying transaction, including false advertising; the false disclosure of the costs of financing associated with the purchase (by means of requiring Ms. Pierre to purchase various add-on products as a condition of financing), and failure to disclose various warranty terms.

ASFS seeks to dismiss, as to ASFS only, all of Plaintiff's claims against it, including claims brought under the Truth in Lending Act, 15 U.S.C. § § 1601 *et seq*. (TILA), Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*. (MMWA), New York General Business Law § 350 (GBL), and for common law fraud.[1] As will be discussed in detail below, ASFS' arguments are deeply flawed and its motion must be denied.

With regard to Plaintiff's TILA claims, ASFS argues that it may not be held liable as an assignee because the violations were not "apparent on the face of the RIC" *i.e.* the Retail Installment Contract. Memorandum of Law for Summary Judgment by Defendant ASFS ("Def. MOL") at p. 2.

As set forth below, pursuant to 15 U.S.C. § 1641(a), this is an incomplete and thus inaccurate statement of the law. More accurately, the question is whether the violation was apparent on the face of the Retail Installment Contract "or other documents assigned". Here,

---

[1] Co-Defendant Planet Automotive does not move for summary judgment on any claim.

1 | P a g e

ASFS's own documents show that, as part of the assignment, ASFS required from the dealer (and in fact received) numerous other documents (*i.e.*, the "transaction documents", the "contract package", etc.), all of which were inconsistent with the disclosure to Ms. Pierre found in the RIC.

Indeed, ASFS does not deny any of the above. Nor could it plausibly do so, as (a) it failed to turn over the actual assignment in discovery and (b) its own internal documentation shows that the loan application listed a different price for the vehicle than the price on the RIC. As set forth below, where -- as here -- the various documents assigned are, on their face, inconsistent with one another and the TIL disclosure provided to the consumer, Courts have repeatedly found that an assignee may be held liable.

With regard to the state law claims, ASFS' motion appears to be based entirely on the assertion that it cannot be held liable absent its direct involvement in the underlying transaction. As set forth below, this argument is frivolous. It is well established as a matter of both federal and state law that the assignee "steps into the shoes" of the assignor and is accordingly subject to all claims that could have been asserted against the assignor by the consumer.

Finally, ASFS argues that Plaintiff's claims under the Magnusson-Moss Warranty Act should be dismissed for lack of federal jurisdiction. This argument is likewise without merit. For the same reasons set forth in the briefing provided on this issue at the Court's request immediately following the pre-motion hearing, none of which is acknowledged much less rebutted by ASFS, this Court has both original and supplemental jurisdiction over Plaintiff's MMWA claims.

**FACTS PERTINENT TO ASFS' MOTION**

ASFS is the undisputed assignee of a loan obligation and RIC originated at Co-Defendant Planet's auto dealership. *See* ASFS' Memorandum of Law in Support of Summary Judgment

(ASFS' MOL), p. 2.

Plaintiff alleges that the vehicle was falsely advertised for a lower price (listed on the vehicle's Window Sticker) than she was subsequently charged, in violation of NY GBL § 350. Complaint at ¶12-13, Vehicle Window Sticker (previously attached as Exhibit F to the Declaration of Peter T. Lane, Esq. In Support Of Plaintiff's Motion For Partial Summary Judgment); Plaintiff's Statement Of Material Facts In Controversy, dated November 21, 2014, at ¶ 1.

Regarding Plaintiff's TILA claim, Plaintiff alleges that she was told that in order to finance the vehicle purchase price, she would have to purchase additional products such as a service contract and vehicle theft protection, which ultimately inflated the price of the vehicle far beyond the sale price that had previously been agreed to.

Specifically, Plaintiff alleges, *inter alia*, that:

11. On or about May 5, 2012, Plaintiff agreed to purchase a new 2012 Suzuki Kizashi ("the Vehicle").

12. The window sticker on the vehicle showed a Manufacturer's Suggested Retail Price of $27,549.00.

13. The Dealership's salesperson (Hector Ugairiza) offered to sell the Vehicle for $25,629 and Plaintiff agreed to buy the Vehicle at that price . . .

16. The Dealership [through its finance manager] told Plaintiff that because she had a poor credit rating, she would need to "buy down" the interest rate in order to receive the loan, which had a nominal interest rate of 5.4% APR and a term of 75 months.

17. [The finance manager] told Plaintiff that this mandatory "buying down" meant that she would be required to purchase a manufacturer's extended warranty and service contracts.

18. Plaintiff never asked for either a warranty or a service contract. Instead, the Dealership unilaterally included these products in the deal, as a part of the so-called "buy down."

19. [The finance manager] did not tell Plaintiff the cost of the extended warranty or the cost of the service contracts . . .

21. [The finance manager] presented Plaintiff with a Retail Installment Contract (RIC) that showed a cash sale price of $33,877.89[.] . . .

23. The Truth in Lending Act mandatory disclosure boxes at the top of the RIC were filled in to show that Plaintiff would be paying a 5.44 % annual percentage rate; that the dollar amount of the finance charge was $4,544.86; that the amount of credit provided was $24,629.39; that the total of all payments was $29,174.25; and that the total cost of the Vehicle's purchase (including down payment) was $38,674.25.

24. Nowhere did the RIC disclose that the Plaintiff was forced, as a condition of obtaining financing, to purchase the extended warranty and service contracts.

25. Nowhere in the RIC are the prices of the extended warranty or the service contracts disclosed.

26. Believing that she had no choice if she wished to purchase the Vehicle, Plaintiff signed the RIC.

Complaint, *passim*.

Thus, Plaintiff's allegations that TILA was violated include allegations that the vehicle price increase is a "finance charge" inaccurately disclosed under TILA § 1605(a) and Regulation z § 226.4(a).

Specifically, with regard to TILA, Plaintiff alleges, with regard to TILA that, *inter alia*:

52. The increase in the cash price of the vehicle from the originally confirmed price of $25,629 is a "finance charge" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

53. The cash price increase of over $5,000 is attributable to items that Plaintiff was required to purchase from the Dealership incident to the extension of credit to Plaintiff, and is a "finance charge" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

54. As a result of Defendants' failure to properly include these and/or other fees and charges as finance charges, the sale price, finance charge, amount financed, and APR disclosed in Plaintiff's RIC are all materially misstated, in violation of TILA and Regulation Z. e.g. § 1638(a)(2) through (5) and §226.18(b), (d), (e), and (h).

> 55. Defendants have failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA and Regulation Z. e.g. 15 U.S.C. § 1632(a), § 1638(a), and Regulation Z, e.g. 12 C.F.R. § 226.17(a)(1).

Complaint ¶¶ 52 -55.

Over the course of discovery in this case, it was disclosed the Planet has been the subject of dozens of similar complaints of fraudulently inducing people into purchasing additional products in order to secure financing and falsely advertising lower vehicle prices than were actually charge through the same use of "buy down rates", "bronze packages", etc. as used in Ms. Pierre's case. The New York City Department of Consumer Affairs has conducted an investigation of these widespread complaints and commenced an administrative action in 2013 seeking, inter alia, to revoke Planet's Dealership license and impose maximum fines for the same practices alleged in this litigation. Exhibit H. Plaintiff intends to call many of these victims at trial.

In discovery, Plaintiff demanded the production of all documents and communications relating to the assignment of Plaintiff's account or obligations." See Plaintiff's Request for Production of Documents, dated June 24, 2013, ¶14 (attached to the Schlanger Decl. as Exhibit F).

Defendants failed to produce a copy of an assignment or any other document setting forth with specificity the various documents assigned. However, Defendants did produce an ASFS' Preferred Application Status Report that indicates that ASFS required that additional documents, referred to therein as the "Contract Package", and also produced a group of other transaction documents which ASFS has acknowledged it received from the dealership and which it apparently required to be provided as part of the assignment.

Specifically, it appears that, as part of its taking assignment of Ms. Pierre's loan, ASFS

required that the Dealership transfer to it, and in fact received, the following documents:

    a. Sales Invoice with a sale price of $31,038.25 (Exhibit A, attached to the accompanying Declaration of Daniel A. Schlanger, Esq., dated November 21, 2014);[2]

    b. Retail Installment Contract ("RIC") with a sale price of $31,123.25 (Being the difference between the disclosed cash price of 33877.89 minus the disclosed sales tax of $2754.64) (Exhibit B);

    c. Manufacturer's Invoice showing a Retail Amount of $29,069 and an adjacent Invoice Amount of $27,937.24 (Exhibit C);

    d. the Theft Deterrent Product Protection Certificate showing a sale price of $25,629.00 (Exhibit E), and

    e. the GWC Warranty Contract Application (Exhibit F), listing the vehicle's sales price as $25,629.00

See ASFS Preferred A ASFS Preferred Application Status Report (ASFS Application Report), generated and produced by Defendants ASFS, attached hereto as Exhibit D, stating that the Manufacturers Invoice must be included as part of the "Contract Package"; ASFS Rule 56.1 Statement, at p. 2, stating that the "transaction documents", including the RIC were "sent to ASFS"; ASFS Memorandum of Law at p. 2, stating that the documents produced by it in discovery related to the transaction were "generated/received/transmitted" by ASFS.

It thus appears to be undisputed that, as part of taking assignment, ASFS requested and was provided with numerous documents that were inconsistent with the TIL Disclosure provided to Ms. Pierre, and that these deficiencies were apparent on the faces of the documents, each of which listed a different sales price for the vehicle, and all of which listed a sales price lower than

---

[2] Unless otherwise noted, all Exhibits listed hereafter in this Counterstatement are likewise attached to the Schlanger Declaration.

6 | P a g e

the price listed in the TIL disclosure and upon which the TIL disclosure's finance charge, amount financed and interest rate were calculated.

The ASFS Application Report, generated at the time of assignment by ASFS indicates unequivocally that ASFS knew at the time of assignment that the disclosures provided to Ms. Pierre were inaccurate, as it lists the "Cash Selling Price" of Ms. Pierre's vehicle as $29,995.00 (Exhibit E) whereas the TIL disclosure found in the RIC lists a cash price of $31,123.25 (Exhibit B).

## II.     ARGUMENT

### A. Standard For Defeating Summary Judgment

Federal Rule of Civil Procedure 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule…the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial [otherwise] summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, *against* the moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); Keywell Corp. v. Weinstein, 33 F.3d 159, 163 (2d Cir. 1994) (a party is entitled to summary judgment if "resolving all ambiguities and drawing all factual inferences in favor of the non-moving party, there is no genuine issue of material fact to be tried").

Therefore, to defeat summary judgment, the non-moving party must present evidence that would allow "a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Moreover, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions."  Anderson, 477 U.S. at 255.

### B. ASFS Is Subject To TILA Liability Pursuant To § 1641(a)

As stated above, ASFS asserts that 15 U.S.C. § 1641(a) "eliminates assignee liability under TILA unless the asserted violation is apparent on the face of the RIC".  Def. MOL at p. 2. This is an inaccurate statement. In reality, TILA § 1641(a) provides that "a violation apparent on the face of the disclosure statement includes, but is not limited to… a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement *or other documents assigned*…" (emphasis added).

Accordingly, inconsistencies between the various assigned documents regarding finance charges constitute TILA violations apparent on the face of the documents assigned.  See Brown v. Mortgagestar, Inc. 194 F.Supp.2d 473, 477 (S.D.W.Va. 2002)(discrepancies in principal amount and APR among the TILA disclosure statement, deed of trust, and note are "apparent on the face of the documents" and are sufficient to hold the assignee liable for TILA violations); In re Washington 2007 U.S. Dist. LEXIS 19038, *15-21 (E.D. PA 2007).

Moreover, in Vincent v. Money Store, 736 F.3d 88, 107 (2d Cir. 2013) – the sole authority cited by Defendant – the Second Circuit reinforced this definition of "apparent on the face" in its discussion of Congressional intent to clarify Assignee liability with the 1980 amendment to TILA:

> This [amendment] eliminates two uncertainties under present law as to an assignee's liability for an original creditor's violation of the act. Under present law, an assignee is generally liable only where a violation is "apparent on the face" of the disclosure statement. What types of violations are covered is unclear. This section provides that violations are apparent on the face of a disclosure

8 | P a g e

> statement when disclosures are inaccurate or incomplete based on the statement *or other documents involved*, and where incorrect terminology is utilized.

Id. at 108 (citing S. Rep. No. 96-73, at 18 (1979))(*emphasis added*).

Here, the various documents assigned to ASFS are wildly inconsistent with one another. Specifically, the vehicle price listed in the Sales Invoice ($31,038.25), the Manufacturer's Invoice ($29,069), Theft Deterrent Product Protection Certificate ($25,629.00), and the GWC Warranty Contract Application ($25,629.00) do not match the price set forth in the RIC, which shows a sale price of $31,123.25.

And by its very nature, a loan application indicating a "cash selling price" of $29,995 was part of the assignment as indicated on the Application Status Report generated by ASFS.

Numerous courts have found assignee liability under similar circumstances.

For example, in Price v. Franklin Inv. Co., 574 F.2d 594, 605 (D.C. Cir. 1978), it was determined that variations between disclosures regarding charges on a purchase contract and disclosures regarding those same charges on a TILA disclosure statement constituted inaccuracies that were "apparent on the face of the statement" as a matter of law. There, The DC Circuit specifically stated:

> Although [a] misstatement in question is not an obvious omission that would be "apparent" to one who had not examined the underlying contract, we concluded that if section [1638(a)(9)] is to provide consumers with the protection Congress intended, the assignee must *be held to the knowledge of the underlying contract and of any inconsistency between its terms and the disclosure statement*.

Id.(*emphasis added*).

In England v. MG Invs. Inc., 93 F. Supp. 2d 718, 725 (S.D. W. Va. 2000), the Court denied an assignee's motion to dismiss finding that "patent discrepancies between the note and the TILA disclosure statement" triggered assignee liability under TILA § 1641(a).

9 | P a g e

In <u>Nunez v. Aurora Loan Servs.</u>, 2011 U.S. Dist. LEXIS 123312, 11-13 (S.D. Cal. Oct. 24, 2011), the Court denied an assignee's motion to dismiss where the assignee had received TILA disclosures and a HUD-1 which showed inconsistencies in the terms disclosed, and stated that "[o]n the face of these two documents, they could not both be right. . . . it can be reasonably inferred that the TILA violation was apparent on the face of the loan documents assigned". See also, <u>Brown</u>, 194 F.Supp.2d at 477; <u>In re Washington</u> 2007 U.S. Dist. LEXIS 19038 at *15-21;

Thus, where – as in the case at bar – the TIL disclosure and other documents assigned are in consistent with one another, an assignee may be held liable pursuant to 1641(a).

For this reason, Defendant's contention with regard to TILA liability are without merit.

## C. ASFS's Contentions With Regard To Plaintiff's State Law Claims Are Frivolous

ASFS argues – without citation to any authority -- that it cannot be liable for the GBL § 350 and fraud claims because it was not directly involved in the underlying sale transaction. This argument is simply frivolous.

It is undisputed that ASFS took assignment of Ms. Pierre's loan obligation. Accordingly, ASFS is liable for Co-Defendant Planet's violation of NYGBL § 350 and commission of fraud pursuant to both state and federal statutory law, and common law.

As the Court explained in <u>Ramirez v National Coop. Bank (NCB)</u>, 91 A.D.3d 204 (1st Dept. 2011):

> The [FTC] Holder Rule and Personal Property Law § 302 (9) preserve consumer claims and defenses by mandating that "[a]ny holder of [a] consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained.

<u>Id</u>. at 207

In promulgating the Holder Rule, as authorized by Congress, the FTC specifically intended to preserve a consumer's claims and defenses so that they could be asserted against the holder in

due course of a loan obligation, even though the holder may not have been a party to any false or deceptive actions taken by the selling dealership, hence the full title of the rule: Trade Regulation Rule *Concerning the Preservation of Consumers' Claims and Defenses* (The Holder Rule). 16 C.F.R. Part 433, et seq. (*emphasis added*);  See also, FTC Staff Guidelines on Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses, May 4, 1976, pp. 1-2 at http://www.ftc.gov/system/files/documents/rules/holder-rule/760504hidcrule.pdf.

Even absent NY PPL § 302 (9) and the FTC Holder Rule, both designed specifically to apply to consumer auto financing transactions, ASFS would be liable pursuant to New York General Obligations Law § 13-105 (providing that where a claim or demand is transferred, the assignee takes possession "subject to any defense or counter-claim existing against" the assignor, subject to exceptions not relevant here), and common law.  See Northern Properties, Inc. v. Kuf Realty Corp., 30 Misc. 2d 1, 3 (Westchester 1961) ("it is now beyond dispute than an assignee takes subject to all defenses or counterclaims which the mortgagor possessed against the assignor. . .").

**D. The Court Has Both Original And Supplemental Jurisdiction Over Plaintiff's MMWA Claim**

ASFS has also asserted that the Court lacks jurisdiction over Plaintiffs warranty claims under MMWA because Plaintiff's damages do not meet the $50,000 limit for federal jurisdiction.  Def. MOL at pp. 2-3.  At this Court's request, Plaintiff fully briefed this issue shortly after the pre-motion conference, in a letter dated February 13, 2014 (ECF Document 30). ASFS did not file any opposition to the letter brief.  Even now, ASFS does not reference the letter brief or cite any caselaw, much less rebut the extensive caselaw cited therein, supporting a finding of both original and supplemental jurisdiction.

As explained in Plaintiff's letter, this Court explicitly exercised supplement jurisdiction in a nearly identical case, Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519 (E.D.N.Y.

2006).  As in the instant case, Diaz involved TILA claims based on an auto dealer raising the price of a vehicle and requiring purchase of a warranty as a condition of financing, as well as various other claims, including a claim under the MMWA.  Id., e.g. at 529-531. The Diaz Court held that despite the fact that Plaintiff did not claim to meet the MMWA's $50,000 amount-in-controversy threshold under 15 U.S.C. § 2310(d)(1)(B), supplemental jurisdiction was still available under 28 U.S.C. § 1367:

> This Court has jurisdiction over plaintiff's TILA and ECOA claims pursuant to 28 U.S.C. §§ 1331 and 1337. Plaintiff contends that this Court has jurisdiction over plaintiff's Magnuson-Moss Warranty claims, pursuant to 15 U.S.C. § 2310(d)(1)(B), but has not alleged that it meets the amount in controversy requirements for jurisdiction in federal court. *Nevertheless, this Court exercises supplemental jurisdiction over the warranty claims and plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367.*

Id. at 527 (E.D.N.Y. 2006)(*emphasis added*).

The Seventh and Third Circuits – the only two Circuits to address the issue – have likewise held that supplemental jurisdiction is available.

In Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516 (7th Cir. 2003), the Seventh Circuit stated as follows:

> [The District Court] had federal question jurisdiction over the TILA and FCRA claims and, because both of those claims and the Magnuson-Moss claims arise from the same controversy, it also had the discretionary authority to exercise supplemental jurisdiction over the Magnuson-Moss claims. See 28 U.S.C. § 1367(a) (2000)

Id. at 522.

In Suber v. Chrysler Corp., 104 F.3d 578 (3d Cir. 1997), a case that dealt with supplemental jurisdiction over the MMWA where the Court arguably had diversity jurisdiction over other claims, the Third Circuit likewise held that so long as it had a basis for non-supplemental jurisdiction over some claims, supplemental jurisdiction would exist over the MMWA claim:

> If the district court finds that Suber has established diversity jurisdiction with his Lemon Law or NJCFA claim, the court can exercise supplemental jurisdiction over the Magnuson-Moss Act claim. 28 U.S.C. § 1367(a).

Id. at 589.

Numerous District Courts have likewise noted that while *federal question* jurisdiction over MMWA claims is limited under § 2310(d)(1)(B) by the amount in controversy requirement, this does not bar the exercise of supplemental or diversity jurisdiction over MMWA claims.

For example, in McWhorter v. Elsea, Inc., 2007 U.S. Dist. LEXIS 26914, *27 -*28 (S.D. Ohio Apr. 11, 2007), the Court stated:

> In the instant case, despite the fact that the prayer for relief for the alleged MMWA violation is…clearly under the jurisdictional threshold, the Court retains pendent jurisdiction for the McWhorters' MMWA claim because all other class claims are properly before the Court. See, e.g., Id. at 27-28, citing Chavis v. Fidelity Warranty Services, Inc., 415 F.Supp.2d 620, 624-25 (D.S.C.2006)("The court finds that federal jurisdiction may be appropriate for [MMWA] claims that fail to satisfy the requirements of 15 U.S.C. § 2310(d)(1)(B) if a valid alternative federal jurisdiction basis exists") and Barnes v. West, Inc., 249 F.Supp.2d 737, 739 (E.D.Va.2003) [*28] (reconciling § 2310(d)(1)(B) with § 2310(d)(1)(A) which states that suit be brought "in any court of competent jurisdiction in any State or the District of Columbia" and stating "[t]hus, [MMWA] claims that cannot be independently be heard in federal court owing to the absence of the requisite amount in controversy, can still be heard in federal court in circumstances where supplemental jurisdiction is properly exercised …").

In addition, in Wetzel v. American Motors Corp., 693 F. Supp. 246, 248-53 (E.D. Pa. 1988), a diversity jurisdiction case, the Court held that although the text of the MMWA reflects Congress' intent to bar exercise of federal question jurisdiction over MMWA claims that do not meet the amount-in-controversy requirement, nothing in the text limits a Court's ability to exercise jurisdiction over MMWA claims on other bases, such as diversity or pendant jurisdiction.

Here, it is undisputed that this Court has subject matter jurisdiction over the case pursuant to the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.*, and it is indisputable that Plaintiff's

warranty claims arise from the same controversy/nucleus of operative fact as her TILA claims. As such, consistent with well-established case law, this Court has supplemental jurisdiction over her warranty claim.

Finally, even were supplemental jurisdiction not available to Plaintiff (as it surely is under the authority reviewed *supra*) dismissal of the MMWA claim would not be warranted because Plaintiff's MMWA and other claims include demands for not only actual and statutory damages but also for punitive damages in connection with fraudulent misconduct. As such, it is not a "legal certainty" that Plaintiff cannot meet the $50,000 jurisdictional amount set forth in 15 U.S.C. § 2310(d)(1)(B). See, e.g. Benedetto v. GMAC, 2001 U.S. Dist. LEXIS 25286, 11-13 (W.D. Mo. Apr. 5, 2001)(holding that "the $50,000 requirement is computed on the basis of all claims to be decided in the suit", stating that "the allegations in this lawsuit [regarding concealment of a vehicle's accident history] describe the kind of outrageous conduct, that if proven, may allow recovery of punitive damages against one or more of the defendants" and denying a motion to dismiss for lack of federal question jurisdiction over MMWA claims because "the Court cannot say that it appears to a legal certainty that Benedetto's MMWA claims are for less than the $ 50,000 jurisdictional amount.")


[Intentionally Left Blank – Conclusion on Following Page]

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny ASFS's motion in its entirety.

Dated: November 21, 2014

                                        Respectfully Submitted,

                                        *s/Daniel A. Schlanger*
                                        Daniel A. Schlanger, Esq.
                                        Schlanger & Schlanger, LLP
                                        343 Manville Road
                                        Pleasantville, NY 10570
                                        Ph:  914-946-1981, ext. 101
                                        Fax:  914-946-2930
                                        daniel.schlanger@schlangerlegal.com