UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GHISLAINE PIERRE,                                          REPORT AND
                Plaintiff,                 RECOMMENDATION
        - against -
PLANET AUTOMOTIVE, INC., et al.,                           13-CV-0675 (MKB) (JO)
                Defendants.
----------------------------------------------------------X

JAMES ORENSTEIN, Magistrate Judge:

Plaintiff Ghislaine Pierre ("Pierre") bought a car from defendant Planet Automotive, Inc. ("Planet") and secured a loan from Planet to finance the purchase; Planet then assigned the loan to defendant American Suzuki Financial Services ("Suzuki"). Based on those transactions, Pierre accuses the defendants of fraud, false advertising, false disclosure of financing costs and failure to disclose various warranty terms, in violation of state and federal law. *See* Docket Entry ("DE") 1 (Complaint); Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*; Magnuson Moss Consumer Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; N.Y. G.B.L. § 350. Suzuki now seeks summary judgment. DE 41. Upon referral from the Honorable Judge Margo K. Brodie, United States District Judge, I now make this report and, for the reasons set forth below, respectfully recommend that the court grant the motion and dismiss all of Pierre's claims against Suzuki, with prejudice as to the claim under TILA, and without prejudice as to the remaining claims.

I.     Background[1]

On May 5, 2012, Pierre purchased a 2012 Suzuki Kizashi (the "Car") at Planet's dealership. The Car had a sticker price (that is, the manufacturer's suggested retail price) of $27,549.00; a Planet salesman offered to sell the Car to Pierre for $25,629.00, and Pierre accepted. However, Pierre needed

---

[1] The following factual recitation is drawn from the parties' statements of undisputed facts pursuant to Local Civil Rule 56.1 and presents the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005); DE 41-1 (Suzuki's statement); DE 42-1 (Pierre's statement); DE 63 (Suzuki's revised statement); DE 64 (Pierre's revised statement).

to secure financing for the transaction, and Planet's finance manager told Pierre that because of her poor credit rating, she would need to "buy down" the interest rate to receive the necessary loan – meaning that Planet would only sell her the Car and provide financing if she also purchased such optional additional items as a manufacturer's extended warranty and service contracts. The finance manager did not disclose the cost of those items; instead he presented Pierre with a Retail Installment Contract (the "RIC") that recited a total cash sale price of $33,877.89, without disclosing that the purchase price now included those optional items as a condition for obtaining financing.[2] Pierre signed the RIC. In negotiating the Car's purchase and the RIC, Pierre had no contact with Suzuki. The RIC reflected that Planet was the original creditor, and the parties agree that Planet assigned the loan to Suzuki. Pierre did not contact Suzuki until after she had secured the financing, executed the RIC, and purchased the Car.

---

[2] The RIC summarizes the terms of the transaction as follows:
- total purchase price: $33,877.89;
- sales tax (included in the total purchase price): $2,754.64;
- cash down payment: $8.000.00;
- rebate applied to purchase price: $1,500;
- balance due for the purchase of the Car: $24,377.89;
- additional fees: $251.50;
- total amount to be financed: $24,629.39;
- annual percentage rate of interest: 5.44 percent;
- finance charge ("The dollar amount the credit will cost you."): $4,544.86;
- total of payments ("The amount you will have paid after you have made all payments as scheduled."): $29,174.25;
- total sale price ("The total cost of your purchase on credit, including your down payment of $9,500.00"): $38,674.25;
- payment schedule: 75 monthly payments of $388.99 beginning on June 19, 2012.

DE 41-3 (RIC page 1); DE 41-4 (RIC page 2).

In taking the assignment of the loan, Suzuki received a number of other documents. One of those documents, the sales invoice, lists the price for the Car as $25,629.00, but also discloses a total price of $31,038.25 that included a "Bronze Package" option at a price of $3,749.25; the invoice also recites that the price after the addition of sales tax was $34,129.39. DE 63-1, Ex. A. Planet also sent Suzuki a Contract Package that included a Theft Deterrent Product Protection Certificate and GWC Warranty Contract Application; each listed a sale price of the vehicle of $25,629.00. DE 42-3 at 11, 13 (copies of certificate and warranty).

Pierre filed her Complaint on February 6, 2013. She asserted four causes of action: Count I accused both Planet and Suzuki of violating TILA, Complaint ¶¶ 49-59; Count II accused them of violating the MMWA, *id.* ¶¶ 60-68; Count III asserted a claim of common law fraud against both defendants, *id.* ¶¶ 69-76; and Count IV accused them of unlawful false advertising under New York law, *id.* ¶¶ 77-86 (citing N.Y. Gen. Bus. Law § 350). Following the close of discovery, Suzuki filed the instant fully briefed motion on December 18, 2014. DE 41.[3] The court referred the motion to me by order dated February 4, 2015.

II.   Discussion

   A.   Summary Judgment

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In determining whether to grant summary judgment, a court is confined to issue-finding, not issue resolution. *Rasmussen v. Sigma Corp. of Am.*, 27 F. Supp. 2d 388, 391 (E.D.N.Y. 1998) (citations omitted). The court does not "weigh the

---

[3] On the same date Pierre filed a motion for partial summary judgment that has since been withdrawn. *See* DE 44; DE 51. Planet has not moved for summary judgment.

evidence and resolve the factual issues" but rather "determine[s] as a threshold matter whether there are genuine unresolved issues of material fact to be tried." *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. Am. Broad. Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989)); *see also* Fed. R. Civ. P. 56(c). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* "[A]ll reasonable inferences are drawn in favor of the non-movant[.]" *Wellesley v. Debevoise & Plimpton LLP*, 346 F. App'x 662, 662 (2d Cir. 2009). A party opposing summary judgment may not rely solely on allegations in the complaint to establish a genuine issue of material fact. Fed. R. Civ. P. 56(e); *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).

    B.    <u>TILA</u>

TILA and its implementing rule, Regulation Z, require creditors to make certain disclosures to consumers in consumer credit transactions, including their finance charges, the amount financed and the applicable annual percentage rate of interest. *See* 15 U.S.C. § 1639(a); 12 C.F.R. § 226.6(a). The adequacy of a creditor's disclosures is judged under an objective standard that does not take into account the sophistication of the particular borrower asserting the TILA claim. *See Williams v. Empire Funding Corp.*, 109 F. Supp. 2d 352, 357 (E.D. Pa. 2000).

The statute makes explicit that Pierre can prevail on her TILA claim against Suzuki – which was not the original creditor of her car loan, but was instead the assignee – "only if the violation … is apparent on the face of the disclosure statement, except where the assignment was involuntary." 15 U.S.C § 1641(a). The statute goes on to clarify that "a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or

4

inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." *Id.*

Of those courts finding violations on the face of the disclosures for assignees, apparent violations that resulted in assignee liability under TILA included obvious misrepresentations, such as the lack of clear and conspicuous due dates on the disclosure, the failure to fill in the address of the debtor's home under "security interest," and the obvious use of liquid paper to alter various terms, without any evidence of the consumer's approval. *See Lefoll v. Key Hyudnai of Manchester LLC*, 829 F. Supp. 2d 44, 45-47 (D. Conn. 2011); *Vaden v. Indymac Bank, F.S.B.*, 2003 WL 22136306, at *3-4 (N.D. Ill. Sept. 16, 2003); *Johnson v. Thomas*, 794 N.E.2d 919, 928-929 (Ill. App. Ct. 2003). Pierre alleges no such problems that were apparent on the face of the RIC; instead, she claims that the document was itself "wildly inconsistent" with the other loan documents in the Contract Package. DE 42-2 at 9.

I disagree. Even assuming these other documents were "assigned" to Suzuki within the meaning of TILA (as opposed to simply being available to Suzuki along with the note showing the terms of the loan that had been "assigned" in a legal sense), the documents are not so inconsistent as to make it apparent to an assignee that any discrepancies are the result of a violation of Pierre's rights to truthful financing disclosures under TILA. In some instances, she is plainly comparing apples to oranges, such as when she asserts that the $27,937 price for the Car recited on the manufacturer's invoice from the distributor to Planet is somehow inconsistent with the RIC's disclosure of Planet's $33,877 sale price to Pierre, even though they are two completely different transactions. *Compare* 41-3 at 1*, with* 42-3 at 7. In other instances, the allegedly inconsistent documents do in fact disclose the same amount to be financed, but break down the components of that amount in different ways. *Compare* 41-3 at 1 (RIC shows a cash price of $33,877.89)*, with* 42-3 at 2 (showing a sales invoice with a total of $34,129.39, which includes an additional $239.00 charge for license and title and a tire disposal fee of

5

$12.50, but when subtracted out show a cash prices equal to $33,877.89). Thus, viewing the documents in their proper context, it was not apparent on their face that Pierre's rights under TILA had been violated. Accordingly, even if the other documents in the Contract Package are properly viewed as having been "assigned" to Suzuki, they would not suffice to make an assignee liable for the original creditor's TILA violations.

Although the United States Court of Appeals for the Second Circuit has not had occasion to rule on the instant issue, it has observed in dicta that "when Congress amended TILA, its primary concern was limiting assignee liability for an initial creditor's violations of TILA's disclosure requirements." *Vincent v. The Money Store*, 736 F.3d 88, 108 (2d Cir. 2013). Moreover, virtually all of the courts addressing the matter, both in this district and in other jurisdictions, have concluded that inconsistencies between various assigned documents regarding finance charges are not TILA violations apparent on the face of the disclosure statement – and therefore do not support a claim against the assignee. *See Alkhatib v. New York Motor Grp. LLC*, 2015 WL 3507340, at *23 (E.D.N.Y. June 3, 2015) (recommending dismissal of TILA claims for damages where "plaintiffs do not allege facts suggesting that any discrepancy between the purchase price and the advertised price or fair value of the cars they purchased would be apparent to persons at [the assignee bank] examining the loan documents");[4] *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 197-98 (3rd Cir. 2000) (alleged inaccuracies and misrepresentations in loan documents automobile dealer included in loan package sent to assignee was not a violation "apparent on the face of the disclosure statement" because only retail installment contract was assigned to lender and statute does not require a comparison between

---

[4] In *Alkhatib*, Chief Magistrate Judge Gold recommended granting summary judgment to the defendant assignee with respect to the claims for damages and attorneys' fees under TILA, but recommended denying such relief with respect to any TILA claim seeking rescission. 2015 WL 3507340, at *23. Pierre does not seek such equitable relief here. *See* Complaint ¶ 59 (seeking damages, fees, and costs for alleged TILA violation, as well as a declaration that the defendants violated TILA and Regulation Z).

documents in the loan package); *Green v. Levis Motors, Inc.*, 179 F.3d 286, 295 (5th Cir. 1999) (holding that bank, as assignee of the sales contract, could not be held liable under TILA for the dealer's misstatement of amount paid for state license fees); *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998) (holding that only the dealer making the original disclosures, and not the bank subsequently assigned the installment contract, could be held liable for overstating the charge for an extended warranty even though assignee may know of common industry practices); *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 709-10 (11th Cir. 1998) (holding that the financing company, to whom dealer simultaneously assigned installment contract, could not be found liable for overstated charge to mechanic itemized on contract); *Ritter v. Durand Chevrolet, Inc.*, 932 F. Supp. 32, 35 (D. Mass. 1996) (assignee not liable for car dealer's alleged misrepresentations even where plaintiff alleged assignee had knowledge of the dealer's practices because the violation was not apparent on its face); *Cemail v. Viking Dodge, Inc.*, 982 F. Supp. 1296, 1300 (N.D. Ill. 1997) (holding that assignee financing company could not be liable for undisclosed financing charges that were not apparent on the face of the disclosures). *But see Price v. Franklin Inv. Co.*, 574 F.2d 594, 605 (D.C. Cir. 1978) (finding assignee financing company liable for TILA violation when the disclosure statement varied with the conditional sale contract of a used car). Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA. *Pannetta v. Milford Chrysler Sales Inc.*, 2015 WL 1296736, at *3 (E.D. Pa. Mar. 23, 2015) (finding that comparing the disclosure form with other loan documents "cannot form the basis of a TILA claim").

In addition, several courts have reasoned that TILA should be read narrowly to reflect the legislature's intention to "exclude resort to outside documents in defining assignee liability" and that looking beyond the documents assigned to determine whether a violation was "apparent on the face of the disclosure statement" is inconsistent with the statute. *See Ramadan*, 229 F.3d at 199; *Ellis*, 160 F.3d

7

at 709-10. Indeed, the statutory limitation on liability for assignees was designed to protect assignees from having to verify complicated disclosure forms. Elwin J. Griffith, *Truth in Lending – Recission, Consumer Remedies and Creditor Defenses in Closed-end Transactions*, 19 U. Tol. L. Rev. 491, 538 (1988) ("The rationale for this protection is that the assignee should not be saddled with violations that are not readily detectable.").

Moreover, where Congress intended to require an assignee to compare a disclosure document with other documents – and to face liability for TILA violations if it failed to notice violations that would be revealed by such a comparison – it demonstrably knew how to so do. As noted above, the provision applicable here renders an assignee responsible for violations that are apparent from a disclosure statement (or other assigned document) that is facially incomplete or inaccurate. 15 U.S.C. § 1641(a). But another provision within the same section explicitly subjects assignees in other kinds of transactions to the more exacting standard of comparing disclosure documents to other records: where the transaction is secured by real property, a violation is deemed apparent on the face of a disclosure statement – and therefore sufficient to support assignee liability – "if … the disclosure can be determined to be incomplete or inaccurate *by a comparison among the disclosure statement, any itemization of the amount financed, the note or any other disclosure of disbursement.*" *Id.* § 1641(e)(2) (emphasis added).

The record is clear that any TILA violation by Planet in forcing Pierre to pay for options she did not want to secure the financing she needed was not apparent on the face of the RIC. Moreover, to the extent that some of the other documents in the Contract Package may have included numbers arguably inconsistent with the corresponding numbers in the RIC, I conclude that in such circumstances, the law does not allow Pierre to maintain a claim against the assignee under TILA. I therefore respectfully recommend that the court dismiss with prejudice Pierre's TILA claim against Suzuki.

8

C.     MMWA

A claim under the MMWA for failure to comply with any written or implied warranty may only be brought in federal court when the amount in controversy for all aggregated claims equals or exceeds $50,000. 15 U.S.C. § 2310(d)(1). Pierre's actual and statutory damages are less than that amount, but Pierre asserts that including the punitive damages she seeks satisfy the jurisdictional requirement. That precise argument was rejected in *Alkhatib* for reasons that apply with equal force here: "punitive damages are not recoverable under the MMWA;" and in any event the plaintiff in each case did not seek such relief under that statute. *Alkhatib*, 2015 WL 3507340, at *24 (citing *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 133 (S.D.N.Y. 1982)).

To the extent Pierre contends that this court can exercise supplemental jurisdiction over a claim under the MMWA for less than $50,000, I disagree, again for reasons summarized in *Alkhatib*:

> Federal courts considering whether they may hear MMWA claims involving less than $50,000 pursuant to their supplemental jurisdiction have come to different results. Most courts in this Circuit, however, have held that, "[i]n enacting Magnuson–Moss, Congress implicitly negated pendent jurisdiction of claims made under the statute that amount to less than $50,000." *Lieb,* 538 F. Supp. at 140; *see also Jager v. Boston Road Auto Mall,* 2015 WL 235342, at *4 (S.D.N.Y. Jan.16, 2015) (concluding that, "by enacting the specific jurisdictional limitations for Magnuson–Moss claims in federal court, Congress foreclosed the exercise of supplemental jurisdiction" over MMWA claims for less than $50,000). *But see Diaz v. Paragon Motors of Woodside, Inc.,* 424 F. Supp. 2d 519, 527 (E.D.N.Y. 2006) (concluding, albeit without analysis, that supplemental jurisdiction could be exercised over MMWA claim that did not involve more than $50,000); *Barnes v. West, Inc.,* 249 F. Supp. 2d 737, 739 (E.D. Va. 2003) (holding that "MMWA claims that cannot independently be heard in federal court owing to the absence of the requisite amount in controversy, can still be heard in federal court in circumstances where supplemental jurisdiction is properly exercised under 28 U.S.C. § 1367"); *Samuels v. American Motors Sales Corp.,* 1989 WL 95787, at *2–3 (N.D. Ill. Aug. 9, 1989).
>
> I find the cases holding that supplemental jurisdiction is not available to be more convincing, at least in part because 28 U.S.C. § 1367 itself provides for supplemental jurisdiction "[e]xcept ... as expressly provided otherwise by Federal statute." Here, a federal statute expressly provides otherwise, and [the plaintiff's] MMWA claim should therefore be dismissed.

9

2015 WL 3507340, at *24-25. Accordingly, I respectfully recommend that the court dismiss Pierre's MMWA claim for lack of jurisdiction.

### D. State Law Claims

A federal district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction" – and it should do so where all such claims are dismissed prior to a trial. 28 U.S.C. § 1367(c)(3); *see Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). If the court accepts the foregoing recommendations to dismiss Pierre's claims under TILA and the MMWA, the only remaining claims will be those asserted under state law pursuant to the court's supplemental jurisdiction. I respectfully recommend that the court decline to exercise jurisdiction over those claims.

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the court grant the motion for summary judgment and dismiss all of plaintiff Pierre's claims against defendant American Suzuki Financial Services, with prejudice as to the claim under the federal Truth In Lending Act, and without prejudice as to the remaining claims.

## IV. Objections

Any objections to this Report and Recommendation must be filed no later than September 28, 2015. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2);

*Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
September 11, 2015

/s/
JAMES ORENSTEIN
U.S. Magistrate Judge