UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

GHISLAINE PIERRE,

                                Plaintiff,                    **MEMORANDUM & ORDER**
                                                              13-CV-675 (MKB) (JO)

                v.

PLANET AUTOMOTIVE, INC. and AMERICAN
SUZUKI FINANCIAL SERVICES,

                                Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Ghislaine Pierre filed the above-captioned action against Defendants Planet

Automotive, Inc. ("Planet") and American Suzuki Financial Services ("Suzuki") on February 6,

2013, alleging violations of the Truth in Lending Act ("TILA") and the Magnuson–Moss

Consumer Warranty Act ("MMWA"), and asserting claims of common law fraud and false

advertising under New York state law.  (Compl. ¶¶ 49–86, Docket Entry No. 1.)  Plaintiff's

claims arise from her purchase of a vehicle from Planet, a car dealership, and from Suzuki's

financing of that purchase.  On December 18, 2014, Suzuki moved for summary judgment.[1]

(Suzuki Mot. for Summ. J. ("Suziki Mot"), Docket Entry No. 41.)  On February 4, 2015, the

Court referred Suzuki's motion to Magistrate Judge James Orenstein for a report and

recommendation.  (Order dated Feb. 4, 2015.)  By report and recommendation dated September

11, 2015 ("R&R"), Judge Orenstein recommended that the Court dismiss Plaintiff's TILA and

MMWA claims against Suzuki and decline to exercise supplemental jurisdiction over Plaintiff's

common law fraud and false advertising claims.  (R&R 1, Docket Entry No. 67.)  Plaintiff timely

_____

        [1] Planet did not move for summary judgment.

filed objections to the R&R. (Pl. Objs. to R&R ("Pl. Objs."), Docket Entry No. 69.) By Memorandum and Order dated September 30, 2015 (the "September 2015 Order"), the Court declined to adopt the R&R as to the Court's exercise of supplemental jurisdiction and reserved decision as to whether to adopt the R&R regarding the merits of Plaintiff's TILA and MMWA claims against Suzuki. *Pierre v. Planet Auto., Inc.*, No. 13-CV-675, 2015 WL 5793319, at *1 (E.D.N.Y. Sept. 30, 2015). For the reasons discussed below, the Court denies Suzuki's motion for summary judgment as to Plaintiff's TILA claim and state law claims. The Court grants Suzuki's motion for summary judgment as to Plaintiff's MMWA claim.

## I. Background

On or about May 5, 2012, Plaintiff purchased a vehicle from Planet. (Compl. ¶ 11; Pl. Revised Rule 56.1 Counter-Statement of Material Facts in Controversy ("Pl. 56.1") ¶ 1,[2] Docket Entry No. 64; Suzuki Revised Rule 56.1 Statement in Support of Mot. ("Suzuki 56.1") ¶ 1, Docket Entry No. 63.) Plaintiff and Planet agreed on a price of $25,629.00. (Pl. 56.1 ¶ 1; Decl. of Kinney Galani ("Galani Decl.") ¶ 2(d), Docket Entry Nos. 43-1–43-4; Purchase Order 1, annexed to Suzuki 56.1 as Ex. A.) Plaintiff signed a Retail Installment Contract ("RIC"), which lists the vehicle's cash price as $33,877.89, or $31,123.25 without sales tax, and includes various disclosures required by TILA. (RIC 1, annexed to Suzuki Mot. as Ex A.) Plaintiff contends that in order to secure financing for the purchase, she was required to "buy down" the interest rate of her loan by purchasing additional products for the car, which unlawfully increased the price of the car. (Pl. 56.1 ¶ 1.) According to Plaintiff, the cost of the

---

[2] Plaintiff's revised Rule 56.1 statement consists of eight non-sequentially numbered paragraphs. The Court refers to the sequential numbering of each paragraph.

items she was required to purchase as a condition of her financing were included in the cash price listed on the RIC rather than disclosed separately as finance charges. (Pl. 56.1 ¶ 2.)

Plaintiff's loan was subsequently assigned to Suzuki. (Pl. 56.1 ¶ 3; Suzuki 56.1 ¶ 3.) Plaintiff contends that six specific documents that were part of the assignment of the loan to Suzuki reflect Planet's illegal increase in the price of the car and also reflect inaccurate TILA disclosures. (Pl. 56.1 ¶¶ 3–8.) Plaintiff identifies these documents as: (1) a purchase order with a sales price of $25,629, a subtotal of $31,038.25 with certain fees and extra features, and a total price of $34,129.39, including sales tax and more fees, (Purchase Order 1); (2) a sales invoice with a sales price of $31,038.25 and a total price with taxes and fees of $34,129.39, (Sales Invoice 1, annexed to Decl. of Daniel Schlanger ("Schlanger Decl.") as Ex. A, Docket Entry No. 42); (3) a theft deterrent product certificate with a vehicle purchase price of $25,629 (the "Theft Deterrent Certificate"), (Theft Deterrent Cert. 1, annexed to Schlanger Decl. as Ex. E); (4) a "GWC Warranty" contract application with a vehicle price of $25,629 (the "Warranty Application"), (Warranty Appl. 1, annexed to Schlanger Decl. as Ex. F); (5) a manufacturer's invoice with a retail amount of $27,549 and a total retail amount with various upgrades totaling $29,069, (Mfr. Invoice 1, annexed to Schlanger Decl. as Ex. C); and (6) the RIC, listing a cash price of $33,877.89 or $31,123.25 pre-sales tax, (RIC 1).

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and

recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).

### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. TILA claim

Judge Orenstein recommended that the Court dismiss Plaintiff's TILA claim against

Suzuki.  (R&R 8.)  He determined that, as an assignee, Suzuki was not liable under TILA because there was no TILA violation apparent on the face of the RIC.  (*Id.*)  Plaintiff argues in opposition to the adoption of the R&R that there is a genuine dispute of material fact regarding whether Suzuki should have known, by comparing the RIC to the other assigned documents, that there was a TILA violation because "the amount financed, APR and/or finance charge listed on [the] RIC [were] not clear, conspicuous and materially accurate."  (Pl. Objs. 3.)

"TILA seeks to 'protect . . . consumer[s] against inaccurate and unfair credit billing and credit card practices' and promote 'the informed use of credit' by 'assur[ing] a meaningful disclosure' of credit terms."  *Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013) (alterations in original) (quoting 15 U.S.C. § 1601(a)).  "Together with its implementing Regulation Z, and under specified circumstances, TILA requires disclosure by the 'creditor' of, *inter alia*, the 'amount financed,' the 'finance charge,' and the 'number, amount, and due dates or period of payments scheduled to repay the total of payments,' as well as rescission rights." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 491 (2d Cir. 2014) (internal quotation marks omitted) (first quoting 15 U.S.C. § 1638(a); then citing 15 U.S.C. § 1635; and then citing 12 C.F.R. § 226.23(b)(1)); *see also Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 102 (E.D.N.Y. 2011) ("In general, TILA requires creditors to provide borrowers clear, conspicuous, and accurate disclosures of the loan terms and other material information." (citing 15 U.S.C. § 1632)).  "In order to be considered a finance charge, a charge must be incident to, or a condition of, the extension of credit."  *Pechinski v. Astoria Fed. Sav. & Loan Ass'n*, 345 F.3d 78, 80 (2d Cir. 2003) (citing 15 U.S.C. § 1605(a)); *see also Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 39 (2d Cir. 2011) ("Based on the language of 15 U.S.C. § 1605(a), Regulation Z, and the official staff interpretation, courts have concluded that a creditor is obligated under

§ 1638(a)(3) to disclose as a finance charge any costs charged to customers buying on credit, but not charged to customers buying with cash, in comparable transactions.").

TILA also requires a "lender or creditor to provide 'a written itemization of the amount financed,' including 'each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person.'" *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997) (alteration omitted) (quoting 15 U.S.C. § 1638(a)(2)(B)(iii)); *see also Jones v. Bill Heard Chevrolet, Inc.*, 212 F.3d 1356, 1360 (11th Cir. 2000) ("The language of TILA's section 1638(a)(2)(B)(iii) is clear and straightforward. Section 1638(a)(2)(B)(iii) explicitly requires that creditors 'shall disclose' in writing 'each amount that is . . . paid to third persons by the creditor on the consumer's behalf, together with an identification of . . . the third person' . . . ." (first and second alterations in original) (quoting 15 U.S.C. § 1638(a)(2)(B)(iii))), *overruled on other grounds by Turner v. Beneficial Corp.*, 242 F.3d 1023 (11th Cir. 2001).[3] Although federal courts "have not been pressed to clarify what types of payments are those made 'on the consumer's behalf,'" the Sixth Circuit has held that a "payment is made to a third party 'on the consumer's behalf' when it creates a contractual obligation between the third party and the consumer." *Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 330 (6th Cir. 2001); *see also Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 500 (3d Cir. 1998) (stating that 15 U.S.C. § 1638(a)(2)(B)(iii) mandated that the retail installment contract at issue "itemize[] the $998 charge for the warranty as being paid to a third party").

---

[3] "District courts in the Second Circuit have relied on authorities in other circuits with regards to claims arising under [TILA] due to the general absence of applicable decisions in this Circuit." *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 543 n.17 (E.D.N.Y. 2006) (citing *Ringenback v. Crabtree Cadillac–Oldsmobile, Inc.*, 99 F. Supp. 2d 199 (D. Conn. 2000)).

The statute "imposes general liability only on creditors and greatly circumscribes the liability of assignees." *Vincent*, 736 F.3d at 105 (citing 15 U.S.C. §§ 1640(a), 1641(e)). An assignee is liable for a TILA violation "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a); *Vincent*, 736 F.3d at 107 (quoting *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 692 (7th Cir. 1998)). "[A] violation apparent on the face of the disclosure statement includes, but is not limited to . . . a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned . . . ." 15 U.S.C. § 1641(a).

The Second Circuit has not addressed when a violation of TILA is apparent on the face of the disclosure statement based on discrepancies between the disclosure statement and "other documents assigned." *See Vincent*, 736 F.3d at 107 (discussing the legislative history regarding TILA's limitation on assignee liability and noting that "[w]hat types of violations are covered is unclear" (quoting S. Rep. No. 96-73, at 18 (1979), 1980 U.S.C.C.A.N. 280, 296)). Other circuit courts, including the Seventh Circuit, have examined the issue. *See Taylor*, 150 F.3d 689. In *Taylor*, cited by the Second Circuit in *Vincent*, the Seventh Circuit held that "[o]nly violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA." *Id.* at 694. Thus, where the disclosure statement or other loan documents fail to include required disclosures or are obviously incorrect, courts have found assignees liable for violations of TILA. *See, e.g., Marquette v. Bank of Am., N.A*, No. 13-CV-2719, 2015 WL 461852, at *8 (S.D. Cal. Feb. 4, 2015) (holding assignee liable for violation of TILA where the notice of the right to cancel a loan listed "incorrect dates and blank lines for the date of expiration of the right to cancel"); *LeFoll v. Key Hyundai of Manchester LLC*, 829 F. Supp. 2d 44, 47 (D. Conn. 2011) (holding assignee liable

for violation of TILA where the payment due date of a loan was "not clear or conspicuous" on the disclosure statement); *Vaden v. IndyMac Bank, F.S.B.*, No. 02-CV-1150, 2003 WL 22136306, at *3 (N.D. Ill. Sept. 16, 2003) (holding assignee liable for violation of TILA where the disclosure statement did not properly disclose the security interest by failing to list the address of the property); *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F. Supp. 1295, 1302 (D. Del. 1990) (holding assignee liable for violation of TILA where the credit contract was missing several required terms, including "the amount of [the] plaintiff's monthly payments" and the security interest). In addition, where on the face of the disclosure statement and other assigned documents there are discrepancies that reveal a TILA violation, courts have found TILA assignee liability. *See Nunez v. Aurora Loan Servs.*, No. 11-CV-1121, 2011 WL 5078778, at *4 (S.D. Cal. Oct. 25, 2011) (finding that a discrepancy between disclosure statement and loan document regarding interest rate "was apparent on the face of the[] two documents," resulting in liability to the assignee); *In re Washington*, No. 04-CV-30492, 2007 WL 846658, at *6 (E.D. Pa. Mar. 19, 2007) (finding that a discrepancy between disclosure statement and mortgage note regarding the non-disclosure of the security interest "arguably could have [been] discovered" by comparing the documents, resulting in liability to the assignee); *Brown v. Mortgagestar, Inc.*, 194 F. Supp. 2d 473, 477 (S.D.W. Va. 2002) (finding that discrepancies between disclosure statement, deed of trust, and note regarding principal amount and APR were "apparent on the face of the documents . . . sufficient to hold the assignee liable for TILA violations"); *England v. MG Investments, Inc.*, 93 F. Supp. 2d 718, 725 (S.D.W. Va. 2000) (finding that discrepancies between the note and the disclosure statement regarding principal amount, APR, and finance charge "may be sufficient to trigger assignee liability under this provision").

Relying on *Taylor* and other circuit court decisions, Judge Orenstein noted that, in

general, "inconsistencies between various assigned documents" are not sufficient to trigger

assignee liability under TILA.  (R&R 6–7 (citing *Ramadan v. Chase Manhattan Corp.*, 229 F.3d

194, 198 (3d Cir. 2000); *Green v. Levis Motors, Inc.*, 179 F.3d 286, 295 (5th Cir. 1999); *Ellis v.*

*GMAC*, 160 F.3d 703, 709 (11th Cir. 1998); *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694

(7th Cir. 1998)).)[4]  However, in all of these cases, the plaintiffs relied on documents that were

not assigned, and therefore failed to establish any TILA violations that were apparent "from the

face of the disclosure statement or other documents assigned."  *See Taylor*, 150 F.3d at 694

(relying on "common industry practices"); *Ramadan*, 229 F.3d at 198 (relying on documents

"transferred but not assigned"); *Green*, 179 F.3d at 295 (relying on publicly available

information); *Ellis*, 160 F.3d at 709 (relying on "related loan documents").

Judge Orenstein concluded that, assuming TILA assignee liability may be established

based on inconsistencies between loan documents, the various assigned documents "are not so

inconsistent as to make it apparent to an assignee that any discrepancies are the result of a

violation of [Plaintiff's] rights to truthful financing disclosures under TILA."  (R&R 5.)  In

opposing the R&R, Plaintiff argues that "Suzuki should have known . . . that the amount

---

[4]  *Taylor*, *Ramadan*, *Green* and *Ellis* reaffirm the general principles that, when
determining whether a TILA violation is apparent on the face of the disclosure statement, only
the disclosure statement and other documents assigned can be considered by the court, and an
assignee has no duty to inquire.  *See Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir.
1998) (holding that "§ 1641(a) does not impose a duty of additional inquiry on assignees" and
rejecting the plaintiffs' argument that "the apparentness (or lack thereof) of a violation should be
ascertained" by taking into account "common industry practices"); *see also Ramadan v. Chase*
*Manhattan Corp.*, 229 F.3d 194, 198 (3d Cir. 2000) (holding that documents "transferred but not
assigned" may not be considered when determining whether a violation is apparent on "the face
of the disclosure statement or other documents assigned" (citing *Green v. Levis Motors, Inc.*, 179
F.3d 286, 295 (5th Cir. 1999))); *Green*, 179 F.3d at 295 (concluding that publicly available
information, such as state license fee tables, did not qualify as "documents assigned" and noting
that the "only 'assigned' document that the [plaintiffs] point[ed] to [wa]s the RIC"); *Ellis v.*
*GMAC*, 160 F.3d 703, 709 (11th Cir. 1998) (holding that the plaintiffs could not rely on "related
loan documents" in order to establish assignee liability).

financed, APR and/or finance charge listed on [Plaintiff's] RIC was not clear, conspicuous and materially accurate" by comparing the RIC with any of the following four sets of documents, all of which were assigned to Suzuki: (1) the sales invoice; (2) the purchase order; (3) the manufacturer's invoice; or (4) the Theft Deterrent Certificate and the Warranty Application. (Pl. Objs. 3–4.) The Court considers each below.

### i. Sales invoice

The sales invoice lists the following figures: a sale price of $31,038.25, a license and title fee of $239.00, a tire disposal fee of $12.50, a sales tax of $2754.64, an inspection fee of $10.00, a dealer's optional fee "for processing application for registration and/or certification of title" of $75.00, a total price of $34,129.39, a down payment of $9500.00, and an amount financed of $24,629.39. (Sales Invoice 1.) The RIC lists a total cash price of $33,877.89, which amount includes a sales tax of $2754.64, resulting in a cash price of $31,123.25 without sales tax; a down payment of $9500.00; a license and registration fee of $239.00; a tire fee of $12.50; and an amount financed of $24,629.39. (RIC 1–2.) Thus, both documents identify the same amount financed, but the RIC's cash price, without the sales tax, and the sales invoice's sale price differ by $85.[5]

Plaintiff argues that comparing the RIC and the sales invoice "provides demonstrable proof that the RIC materially misstates the amount to be financed" because the $75 dealer's optional fee was incorporated into the RIC's cash price rather than disclosed as a third-party charge, as required by TILA. (Pl. Objs. 5–7.) Plaintiff contends that the dealer's fee was not a

---

[5] Plaintiff suggests that this difference can be explained by the inclusion of the $10 inspection fee and the $75 dealer's fee in the cash price listed on the RIC. (Pl. Objs. 5.) Plaintiff alleges that these additional costs should have been separately itemized on the RIC. (*Id.* at 5–6.)

"bona fide government fee[]," which "can permissibly be excluded from the finance [charge]," but rather was a third-party charge.[6] (Pl. Objs. 5–6.)

The RIC and the sales invoice are not sufficiently inconsistent as to the sale price to make it apparent to Suzuki that the $85 discrepancy between the two documents was a dealer's optional fee that was paid to a third party on Plaintiff's behalf and therefore required to be separately itemized. The sales invoice specifically states that the dealer's optional fee was "for processing application for registration and/or certificate of title" and notes that the consumer could "avoid this fee by submitting [her] own application for registration and/or certificate of title." (Sales Invoice 1.) Although the dealer's fee could have been paid to a third party to process the application, this is not apparent from the face of the sales invoice. Thus, the sales invoice did not put Suzuki on notice of any potential TILA violation.

### ii. Purchase order

The purchase order lists the following figures: a sales price of $25,629.00, dealer acquisition fees of $895, a bronze package of $3749.25, a destination fee of $765, a subtotal of $31,038.25, a sales tax of $2767.14, a dealer's optional fee of $75.00,[7] title fees of $239.00, an inspection fee of $10.00, a total price of $34,129.39, a down payment of $9,500.00, and an amount financed of $24,629.39. (Purchase Order 1.) The amount financed listed on the

---

[6] Plaintiff also appears to argue that even if the dealer's fee was a government fee and therefore not required to be disclosed on the RIC, the $75 dealer's fee was an "upcharge[]" and an "overcharge" that had to be disclosed as a finance charge on the RIC. (Pl. Objs. 6–7.) Plaintiff's argument is not supported by the record. The sales invoice explicitly states that the "dealer's application processing fee is not a New York State or Department of Motor Vehicles fee." (Sales Invoice 1.) Therefore, an assignee reviewing the sales invoice would have no reason to believe that the fee was a government fee or that Planet overcharged Plaintiff.

[7] The purchase order, like the sales invoice, states that this fee is "for processing application for registration and/or certificate of title" and "is not a New York State or Department of Motor Vehicles fee." (Purchase Order 1.)

purchase order is consistent with the amount financed on the RIC.

Plaintiff asserts that comparing the RIC and the purchase order "demonstrates that the RIC, on its face, violates TILA." (Pl. Objs. 9.) Plaintiff argues that the $3749.25 cost of the bronze package listed on the purchase order included a third-party vehicle warranty and a third-party anti-theft insurance. (*Id.*) Plaintiff further argues that, because the vehicle warranty and anti-theft insurance are amounts that must be paid to third parties, the cost of the bronze package should have been separately itemized on the RIC rather than incorporated into the cash price listed on the RIC. (*Id.*)

Because there is nothing on the face of the purchase order to suggest that the bronze package included a third-party vehicle warranty or a third-party anti-theft insurance, it is not apparent from comparing the RIC and the purchase order that these documents violated TILA by failing to separately itemize third-party services. The purchase order states "BRONZE PKG/ETCH/ET" and makes no reference to a third-party vehicle warranty or a third-party anti-theft insurance. (*See* Purchase Order 1.) Moreover, although the Warranty Application and the Theft Deterrent Certificate were documents assigned to Suzuki, neither refers to a "bronze package" or identifies a cost for the services. (*See* Warranty Appl. 1; Theft Deterrent Cert. 1.) Thus, Suzuki could not have determined that the Warranty Application or the Theft Deterrent Certificate was part of the bronze package or that the cost associated with these services totaled $3749.25, the cost of the bronze package. Suzuki therefore could not have determined from reviewing and comparing the assigned documents that the bronze package consisted of third-party services that should have been itemized on the RIC.

### iii. Manufacturer's invoice

The manufacturer's invoice lists the following figures: a retail amount of $27,549.00 and

a total retail amount of $29,069.00. (Mfr. Invoice 1.) Plaintiff argues that because the retail amount and the total retail amount listed on the manufacturer's invoice are both lower than the RIC's cash price, this is "highly suggestive of hidden/undisclosed additional charges" and is a "red flag that would put a reasonable assignee on notice that the disclosures hid significant charges." (Pl. Objs. 7.)

As Plaintiff concedes, comparing the cash price of the car listed on the RIC, $31,123.25, with the $27,549.00 retail amount and the $29,069.00 total retail amount listed on the manufacturer's invoice does not reveal a TILA violation because the fact that a vehicle sells for a price higher than the manufacturer's suggested price, "standing alone," is insufficient to "trigger assignee liability." (*Id.*) Plaintiff argues that the fact that a vehicle sells for a price higher than the manufacturer's suggested price is a "red flag," however, requiring Suzuki to inquire into this discrepancy would be contrary to the requirements of section 1641(a) of TILA. *See Taylor*, 150 F.3d at 694 ("[Section] 1641(a) does not impose a duty of additional inquiry on assignees."). Thus, Suzuki was not put on notice of a potential TILA violation based on the RIC's cash price, the retail amount and the total retail amount listed on the manufacturer's invoice.

### iv. Theft Deterrent Certificate and Warranty Application

The Theft Deterrent Certificate and the Warranty Application both list the vehicle price as $25,629.00, (GWC Appl. 1; Theft Deterrent Cert. 1), compared to the RIC cash price of $31,123.25. Plaintiff argues that by comparing these documents with the RIC, Suzuki should have been on notice that the RIC was not accurate because the price listed on each of these documents is "irreconcilable with the figures provided in the RIC" and because these documents relate to third-party services that should have been itemized on the RIC. (Pl. Objs. 8.)

The difference in price between the $31,123.25 cash price listed on the RIC and the

$25,629.00 price listed on the Theft Deterrent Certificate and the Warranty Application would not have put Suzuki on notice that the RIC was not in compliance with TILA. As discussed above, the purchase order details the various fees, optional features and sales tax that increased the cash price listed on the RIC.

However, Plaintiff has raised a genuine issue of material fact as to whether it is apparent from comparing the RIC with these documents that the Theft Deterrent Certificate and the Warranty Application should have been listed on the RIC as third-party charges. The Theft Deterrent Certificate and the Warranty Application, both documents assigned to Suzuki, refer to third-party services. The Theft Deterrent Certificate states that it is a contract for an anti-theft insurance policy provided by the "Virginia Surety Company." (Theft Deterrent Cert. 1.) The Warranty Application states that it is a contract for a vehicle warranty provided by the "GWC Warranty Corporation." (GWC Appl. 1). However, these third-party services are not listed on the RIC. (*See* RIC 1–2 (listing under "Other Charges Including Amounts Paid to Others on Your Behalf" only a $239.00 government license fee and a $12.50 tire management fee).) Construing the evidence in the light most favorable to Plaintiff, based on the face of the RIC, the Theft Deterrent Certificate and the Warranty Application, a reasonable jury could conclude that Suzuki should have noticed that the RIC failed to disclose these third-party services, making it inaccurate and in violation of 15 U.S.C. § 1638(a)(2)(B)(iii). *See Ramadan*, 156 F.3d at 500 (stating that a warranty paid to a third party had to be itemized on the retail installment contract (citing 15 U.S.C. § 1638(a)(2)(B)(iii))). The Court therefore denies Suzuki's motion for summary judgment as to Plaintiff's TILA claim as it relates to the failure to separately itemize the Theft Deterrent Certificate and the Warranty Application on the RIC.

### c. Magnuson–Moss Warranty Act claim

Judge Orenstein recommended that the Court dismiss Plaintiff's MMWA claim for lack of subject-matter jurisdiction because Plaintiff failed to satisfy the MMWA's amount-in-controversy requirement.[8]  (R&R 9–10.)  Judge Orenstein further held that the MMWA's amount-in-controversy requirement implicitly negated the Court's authority to exercise supplemental jurisdiction over Plaintiff's MMWA claim, and he therefore recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's MMWA claim.  (*Id.*)  Plaintiff argues that, like the majority of courts to consider whether the MMWA permits the exercise of supplemental jurisdiction, the Court should find that it does.  (Pl. Objs. 16.)

"In order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products," the MMWA requires warrantors to "fully and conspicuously disclose in simple and readily understood language the terms and conditions" of written warranties.  15 U.S.C. § 2302(a); *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996); *Stark v. Maserati N. Am., Inc.*, No. 10-CV-1243, 2010 WL 4916981, at *2 (E.D.N.Y. Oct. 13, 2010); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990) ("The thrust of the Act is

---

[8]  The MMWA provides that "[n]o claim shall be cognizable in a suit brought under" the statute "if the amount in controversy of any individual claim is less than the sum or value of $25" or "if the amount in controversy" of "all claims to be determined in this suit" is "less than the sum or value of $50,000 (exclusive of interests and costs)."  15 U.S.C. § 2310(d)(3).  Plaintiff's actual and statutory damages do not meet the required amount-in-controversy without including her punitive damages.  (R&R 9.)  Judge Orenstein concluded that the MMWA does not permit the inclusion of punitive damages in order to meet the amount-in-controversy requirement.  (*Id.*)  Because the Court finds that it may exercise supplemental jurisdiction over Plaintiff's MMWA claim even if Plaintiff cannot meet the amount-in-controversy requirement, the Court declines to determine whether Plaintiff may include punitive damages in calculating the amount in controversy.

disclosure. . . . The Act does not require that a warranty be provided, but mandates that, if one is given, it not be misleading." (citing 15 U.S.C. § 2302(a))).

### i. Subject-matter jurisdiction

"Jurisdiction under Magnuson–Moss is concurrent with the state courts, but federal court jurisdiction is restricted to those suits that can satisfy two relevant elements (1) the amount in controversy of any individual claim must be at least $25; and (2) the overall amount in controversy must be at least $50,000, excluding interest and costs." *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 65 (2d Cir. 2013) (citing 15 U.S.C. § 2310(d)(3)); *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 241 (2d Cir. 1986). The issue raised by Plaintiff's claim is whether the Court can exercise supplemental jurisdiction, assuming Plaintiff cannot meet the amount in controversy requirement.

### 1. The Court can exercise supplemental jurisdiction

"Under 28 U.S.C. § 1367(a), district courts 'shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting 28 U.S.C. § 1367(a)). However, "[i]n order to exercise supplemental jurisdiction, a federal court must first have before it a claim sufficient to confer subject matter jurisdiction." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). In addition, the claim conferring subject matter jurisdiction and the supplemental claim "must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Id.* (quoting *Gibbs*, 383 U.S. at 725).

The Second Circuit has not considered whether the MMWA's amount-in-controversy

requirement prevents district courts from exercising supplemental jurisdiction over MMWA claims that do not meet the required amount in controversy. The Seventh and Third Circuit Courts of Appeal have considered the issue, and both concluded that district courts may exercise supplemental jurisdiction over MMWA claims that do not meet the amount-in-controversy requirement. *See Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 845 (7th Cir. 2014) (stating that the district court could "properly exercise supplemental jurisdiction over the Magnuson–Moss Act claim" (first citing 28 U.S.C. § 1367(a); and then citing *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 522 (7th Cir. 2003))); *Suber v. Chrysler Corp.*, 104 F.3d 578, 589 (3d Cir. 1997) ("[T]he [district] court can exercise supplemental jurisdiction over the Magnuson–Moss Act claim." (citing 28 U.S.C. § 1367(a))), *as amended* (Feb. 18, 1997). Several district courts have considered the issue and have reached differing results.

Many of the district courts that have considered this issue have concluded that federal courts can exercise supplemental jurisdiction over such claims. *See Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 614 (D. Md. 2014) (citing *Barnes v. West, Inc.*, 249 F. Supp. 2d 737, 739 (E.D. Va. 2003)); *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 n.4 (D.N.J. 2011) (citing *Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 623 (D.S.C. 2006)); *McWhorter v. Elsea, Inc.*, No. 00-CV-473, 2007 WL 1101249, at *10 (S.D. Ohio Apr. 11, 2007) (first citing *Chavis*, 415 F. Supp. 2d at 624–25; and then citing *Barnes*, 249 F. Supp. 2d at 739); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 527 (E.D.N.Y. 2006); *Chavis*, 415 F. Supp. 2d at 623–25 & n.3 (collecting cases); *Wetzel v. Am. Motors Corp.*, 693 F. Supp. 246, 251 (E.D. Pa. 1988); *Seybold v. Francis P. Dean, Inc.*, 628 F. Supp. 912, 916–17 (W.D. Pa. 1986). These courts have reasoned that, although Congress is generally free to limit the jurisdiction of federal courts, "any such limitation must be imposed by

a clear expression of Congressional intent." *Wetzel*, 693 F. Supp. at 250 (citing *Frost v. Wenie*, 157 U.S. 46, 58 (1895)). Relying on the statute's legislative history, which noted that "[t]he purpose of [the MMWA's] jurisdictional provisions is to avoid trivial or insignificant actions being brought as class actions in the federal courts," several of these courts have concluded that the MMWA's amount-in-controversy requirement does not express a "congressional intent opposing the exercise of pendent jurisdiction." *Seybold*, 628 F. Supp. at 916 (quoting H.R. Rep. No. 93-1107 (1974), 1974 U.S.C.C.A.N. 7702, 7724); *see also Wetzel*, 693 F. Supp. at 251 (citing H.R. Rep. No. 93-1107 (1974), 1974 U.S.C.C.A.N. 7702, 7724). The court in *Seybold* explained that, because Congress' purpose in enacting the amount-in-controversy requirement was to avoid "trivial" class actions being brought in federal court, Congress' intent would "not be frustrated" by the court exercising supplemental jurisdiction over an MMWA claim where an action "was already pending before the court." *Seybold*, 628 F. Supp. at 916. The court in *Seybold* noted that "no additional evidence would be required due to the addition of this claim" and, therefore, "[j]oinder of this claim [would] not lengthen the trial nor affect th[e] court's ability to function efficiently." *Id.* In reaching its conclusion, the court noted that Congress did not intend for the court to "remand[] one integrally involved claim to state court, thereby creating the unfavored situation of piecemeal litigation." *Id.* (quoting *Brummett v. Skyline Corp.*, 38 Fed. R. Serv. 2d 1443, 1444–45 (W.D. Ky. 1984)).

In reaching the opposite conclusion, Judge Orenstein relied on *Alkhatib v. N.Y. Motor Grp. LLC*, No. 13-CV-2337, 2015 WL 3507340 (E.D.N.Y. June 3, 2015). (R&R 9–10 (citing *Alkhatib*, 2015 WL 3507340, at *24).) In *Alkhatib*, the magistrate judge concluded that "[i]n enacting Magnuson–Moss, Congress implicitly negated pendent jurisdiction of claims made under the statute that amount to less than $50,000." *Alkhatib*, 2015 WL 3507340, at *24

(alteration in original) (first quoting *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 140 (S.D.N.Y. 1982); and then citing *Jager v. Boston Road Auto Mall*, 2015 WL 235342, at *4 (S.D.N.Y. Jan. 16, 2015))). The court in *Alkhatib* noted that "the cases holding that supplemental jurisdiction is not available [were] more convincing, at least in part because 28 U.S.C. § 1367 itself provides for supplemental jurisdiction '[e]xcept . . . as expressly provided otherwise by Federal statute.'" *Alkhatib*, 2015 WL 3507340, at *25 (second and third alterations in original). *Lieb*, on which *Alkhatib* principally relied, noted that "[b]efore it can be concluded that (pendent) jurisdiction exists, a federal court must satisfy itself not only that Art[icle] III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." *Lieb*, 538 F. Supp. at 140. The court in *Lieb* found that "Congress implicitly negated" supplemental jurisdiction of MMWA claims that do not meet the amount-in-controversy requirement because "Congress deliberately chose that figure to prevent Magnuson–Moss claims from inundating the federal court." *Id.* (citing *Novosel v. Northway Motor Car Corp.*, 460 F. Supp. 541, 543–44 (N.D.N.Y. 1978))). The court in *Lieb* also noted that exercising supplemental jurisdiction "effectively would rewrite the amount in controversy requirement" and held that "[o]nce Congress has chosen a higher figure, a court may not exercise its discretionary powers to apply a lower threshold." *Id.* The Court is not persuaded that the MMWA negates the Court's authority to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

"When it is claimed that a later enacted statute creates an irreconcilable conflict with an earlier statute, the question is whether the later statute, by implication, has repealed all or, more typically, part of the earlier statute." *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 89 (2d Cir. 2016). The Supreme Court has explicitly stated that "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and

manifest." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (alteration and internal quotation marks omitted) (citing *Watt v. Alaska*, 451 U.S. 259, 267 (1981)). The Supreme Court has also made clear that federal courts cannot "infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Id.* at 662–63 (alterations and internal quotation marks omitted) (collecting cases)); *see also Garfield*, 811 F.3d at 89 ("Repeal by implication is disfavored. 'In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.'" (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974)).

The MMWA amount-in-controversy requirement does not expressly contradict the supplemental jurisdiction statute. The MMWA imposes a limitation on a court's exercise of original jurisdiction but does not discuss a court's authority to exercise supplemental jurisdiction. *See* 15 U.S.C. § 2310(d)(3); *Chavis*, 415 F. Supp. 2d at 623–24 (noting that the MMWA's amount-in-controversy requirement limits the court's "traditional" source of federal question jurisdiction but does not alter "alternative source[s] of federal jurisdiction," such as supplemental jurisdiction). Furthermore, the MMWA and the supplemental jurisdiction statute are not irreconcilable, nor will exercising supplemental jurisdiction render the amount-in-controversy requirement completely meaningless. The MMWA's amount-in-controversy requirement prevents a federal court from hearing an MMWA claim that does not meet the required amount in controversy and does not share a common nucleus of operative fact with a claim that independently confers subject matter jurisdiction. *See Montefiore Med. Ctr.*, 642 F.3d at 332 (noting that "[i]n order to exercise supplemental jurisdiction, a federal court must first have

before it a claim sufficient to confer subject matter jurisdiction" and the claims "must stem from the same 'common nucleus of operative fact'" (quoting *Gibbs*, 383 U.S. at 725)); *see also Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 436 (2d Cir. 2011) (noting that a court may exercise supplemental jurisdiction only "where an independent basis of subject-matter jurisdiction exists"). Because the MMWA does not expressly contradict the supplemental jurisdiction statute, and because the two statutes are not irreconcilable, the Court concludes that the MMWA's amount-in-controversy requirement does not prohibit the Court from exercising supplemental jurisdiction over Plaintiff's MMWA claim. *See Nat'l Ass'n of Home Builders*, 551 U.S. at 662–63 (stating that in order for a statute to have been implicitly repealed by a later enacted statute the later statute must expressly contradict the original statute or the two statutes must be in "irreconcilable conflict").

Moreover, exercising supplemental jurisdiction over MMWA claims that do not meet the amount-in-controversy requirement will not inundate the federal courts because such claims will necessarily share a "common nucleus of operative fact" with a claim pending before the court. *See Seybold*, 628 F. Supp. at 916, 918. Thus, exercising supplemental jurisdiction will not lengthen the action, require new evidence, or affect the ability of courts to function efficiently. *Id.* In addition, exercising supplemental jurisdiction over such claims avoids "creating the unfavored situation of piecemeal litigation." *Id.* (quoting *Brummett*, 38 Fed. R. Serv. 2d at 1444–45).

### 2. There is a basis for exercising supplemental jurisdiction

Although the Court can exercise supplemental jurisdiction, the Court must nevertheless determine whether there is a basis to decline to exercise supplemental jurisdiction. As the Court explained in the September 2015 Order, 28 U.S.C. § 1367 authorizes a district court that has

original jurisdiction over a claim to exercise supplemental jurisdiction over "all other claims" that share a common nucleus of operative fact with the first claim. *Pierre*, 2015 WL 5793319, at *2 (quoting 28 U.S.C. § 1367). Where a plaintiff's state law claim shares a common nucleus of operative fact with the plaintiff's federal claim, the court can decline to exercise supplemental jurisdiction over the state law claim "only if" one of the circumstances enumerated at 28 U.S.C. § 1367(c) is present. *Id.* at *3 (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 27 (2d Cir. 2014) ("[T]he discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of [28 U.S.C. § 1367(c)]." (alteration in original) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002))); *Shahriar*, 659 F.3d at 245 ("[T]he discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." (quoting *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)))). Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, Plaintiff has asserted the same claims against Planet and Suzuki, and Planet has not moved for summary judgment. Therefore, "regardless of the outcome of Suzuki's motion," Plaintiff's TILA and MMWA claims against Planet remain pending and will proceed to trial. *Pierre*, 2015 WL 5793319, at *3. The Court has federal question jurisdiction over Plaintiff's TILA claim, which shares a common nucleus of operative fact with Plaintiff's MMWA claim

since both sets of claims arise from Plaintiff's purchase of a vehicle from Planet and Suzuki's

financing of that purchase. *Id.* Because Plaintiff's MMWA claim shares a common nucleus of

operative fact with Plaintiff's TILA claim, the Court can decline to exercise supplemental

jurisdiction only if the section 1367(c) circumstances are present. However, none of the section

1367(c) circumstances are present. Plaintiff's MMWA claim does not raise a novel or complex

issue of state law, does not predominate over Plaintiff's TILA claim against Planet and Suzuki,

the Court has not dismissed all claims over which it has jurisdiction, and there are no other

compelling reasons to decline jurisdiction. Accordingly, there is no basis to decline

supplemental jurisdiction. The Court therefore exercises supplemental jurisdiction over

Plaintiff's MMWA claim against Suzuki. The Court next addresses the merits of Plaintiff's

MMWA claim.[9]

### ii. Assignee liability

Suzuki asserts that it was not "involved in [P]laintiff's purchase of any underlying

warranty," and therefore Plaintiff has no MMWA claim against it. (Suzuki Mem. 2.) Plaintiff

argues that Suzuki is subject to all claims that Plaintiff can assert against Planet because Suzuki,

as an assignee, "stepped into the shoes" of Planet. (Pl. Mem. 10–11 (citing 16 C.F.R. § 433.2).)

The MMWA allows a consumer who is "damaged by the failure of a supplier, warrantor,

or service contractor to comply with any obligation under th[e] [MMWA]" to "bring suit for

damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The MMWA, unlike

TILA, does not contain an express provision limiting assignee liability, and the Second Circuit

has not addressed whether such a limitation should be implied. District courts that have

---

[9] Because Judge Orenstein dismissed Plaintiff's MMWA claim against Suzuki on jurisdictional grounds, he did not consider the merits of Plaintiff's MMWA claim. (*See* R&R 10.)

considered whether MMWA liability extends to assignees have reached differing results. *Compare Angelillo v. Harte Nissan, Inc.*, No. 09-CV-1313, 2010 WL 569887, at *6 (D. Conn. Feb. 17, 2010) (holding that the "plaintiff cannot assert a claim against [the defendant], as assignee, under the MMWA), *and Owens v. Tranex Credit Corp.*, No. 96-CV-1272, 1998 WL 35983384, at *17 (S.D. Ind. Aug. 11, 1998) (same), *with Diaz*, 424 F. Supp. 2d at 544 (holding that a plaintiff may assert an MMWA claim against an assignee), *and Dees v. Bob O'Connor Ford, Inc.*, No. 94-CV-7083, 1995 WL 441629, at *3 (N.D. Ill. July 20, 1995) (same).

Courts that have concluded that the MMWA provides for assignee liability have based their decisions on 16 C.F.R. § 433.2, generally referred to as the "Holder Rule." The Holder Rule, a regulation promulgated by the Federal Trade Commission (the "FTC"), preserves a consumer's right to assert the same legal claims and defenses against the assignee of a credit contract as that consumer could have asserted against the assignor. *See Diaz*, 424 F. Supp. 2d at 543–44; *Dees*, 1995 WL 441629, at *3. The courts that have concluded that the MMWA provides for assignee liability have found that the Holder Rule permits plaintiffs to assert MMWA claims against assignees. *See Diaz*, 424 F. Supp. 2d at 544; *Dees*, 1995 WL 441629, at *3.

In contrast, courts that have concluded that the MMWA does not provide for assignee liability have relied on section 2310(f) of the MMWA, which states that "only the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under th[e] [MMWA] only against such warrantor and no other person."[10] *See Angelillo*, 2010 WL 569887,

---

[10] The MMWA defines warrantor as "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5).

at *5–6; *Owens*, 1998 WL 35983384, at *16–17. These courts have concluded that section 2310(f) is a "limiting jurisdictional provision" that "super[s]edes" the Holder Rule. *Angelillo*, 2010 WL 569887, at *6; *see also Owens*, 1998 WL 35983384, at *17 (stating that the "[MMWA] very clearly and specifically limits who may be liable under the Act" and, therefore, the Holder Rule "should not be construed to trump the plain language of the [MMWA]"). In reaching this conclusion, these courts have compared section 2310(f) of the MMWA to section 1641(a) of TILA,[11] and have held that section 2310(f), like section 1641(a) of TILA, supersedes the Holder Rule. *See Angelillo*, 2010 WL 569887, at *6 (stating that there was "no reason to distinguish the cases addressing TILA" and the MMWA claim before the court); *Owens*, 1998 WL 35983384, at *17 (stating the question of assignee liability under the MMWA was "virtually identical" to assignee liability under TILA (citing *Taylor*, 150 F.3d at 693)). The Court finds that, based on the text of the MMWA and the general principle that a regulation cannot override the plain language of a statute, the MMWA prohibits assignee liability.

The plain text of the MMWA prohibits assignee liability where the assignee is not the person who created the written warranty. 15 U.S.C. § 2310(f) (providing that that the MMWA may be enforced against "only the warrantor [who] actually . . . created a written warranty . . . and no other person"). Although the Holder Rule normally permits an individual to assert all claims and defenses against an assignee that he or she could have asserted against the assignor, "[r]egulations cannot trump the plain language of statutes." *Taylor*, 150 F.3d at 693 (first quoting *Robbins v. Bentsen*, 41 F.3d 1195, 1198 (7th Cir. 1994); and then citing *Foster v. Celani*, 849 F.2d 91, 91 (2d Cir. 1988)); *see also Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. ---, ---,

---

[11] Section 1641(a) of TILA provides that an assignee is liable for a TILA violation "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." 15 U.S.C. § 1641(a).

133 S. Ct. 1326, 1334 (2013) ("It is a basic tenet that regulations, in order to be valid, must be consistent with the statute under which they are promulgated." (citation and internal quotation marks omitted)); *Seabrook v. Obama*, No. 14-CV-4431, 2015 WL 4635617, at *6 (S.D.N.Y. Aug. 4, 2015) (noting that "statutes trump regulations"); *cf. Costantino v. U.S. Citizenship*, No. 14-CV-8753, 2015 WL 8489976, at *2 n.2 (S.D.N.Y. Dec. 9, 2015) (stating that an agency's policy guidance cannot "trump the plain language of the relevant statutes"). The Court finds that section 2310(f) of the MMWA trumps the Holder Rule and expressly prohibits Plaintiff from asserting her MMWA claim against Suzuki as an assignee who did not create the warranty at issue. The Court therefore grants Suzuki's motion for summary judgment as to Plaintiff's MMWA claim.

### d. State law claims

Judge Orenstein recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's common law fraud and false advertising claims against Suzuki. (R&R 10.) The Court's September 2015 Order declined to adopt that portion of R&R. *Pierre*, 2015 WL 5793319, at *3–4. The Court now considers the merits of Suzuki's motion for summary judgment as to Plaintiff's state law claims against Suzuki.

Suzuki argues that Plaintiff's fraud and false advertising claims must be dismissed because Suzuki was not "involved whatsoever in the complained-of advertising by the dealership or the complained-of deceptive practices allegedly directed at plaintiff by the dealership in her purchase." (Suzuki Mem. 3.) Plaintiff relies on section 302(9) of New York Personal Property Law and the Holder Rule to argue that Suzuki is liable as an assignee for all claims that Plaintiff can assert against Planet. (Pl. Mem. 10–11.)

"It has always been the law in New York that an assignee stands in the shoes of its

assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment . . . ." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (quoting *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 682 (2d Cir. 1989)); *see also In re NobleHouse Techs., Inc.*, No. 12-10797, 2013 WL 6816129, at *5 (Bankr. N.D.N.Y. Dec. 24, 2013) ("The golden rule of assignments is that the assignee steps into the shoes of the assignor . . . ." (citing *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (1975))); *see generally* N.Y. Gen. Oblig. Law § 13-105 ("Where a claim or demand can be transferred, the transfer thereof passes an interest . . . subject to any defense or counter-claim, existing against the transferrer, before notice of the transfer, or against the transferee.").

Section 302(9) of the New York Motor Vehicle Retail Instalment Sales Act provides that:

> No retail instalment contract shall contain any provision by which the buyer agrees not to assert against an assignee a claim or defense arising out of the sale or require or entail the execution of any note or series of notes, which when separately negotiated will cut off as to third parties any right of action or defense which the buyer may have against the seller. The assignee of a retail installment contract or obligation shall be subject to all claims and defenses of the buyer against the seller arising from the sale notwithstanding any agreement to the contrary, but the assignee's liability under this subdivision shall not exceed the amount owing to the assignee at the time the claim or defense is asserted against the assignee.

N.Y. Pers. Prop. Law § 302(9); *see also Ramirez v. Nat'l Co-op. Bank*, 938 N.Y.S.2d 280, 282 (App. Div. 2011) (finding that the Holder Rule and Personal Property Law § 302(9) preserve consumer claims and defenses by mandating that "[a]ny holder of [a] consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained" (alterations in original)); *Matter of State of New York v. DeFranco Ford, Inc.*, 609 N.Y.S.2d 266, 267 (App. Div. 1994) ("The appellant's [car financing company] liability to consumers arises from its status as assignee of the retail installment contracts. Pursuant to Personal Property Law § 302(9), the appellant, as an assignee, is subject to 'all claims and

defenses of the buyer against the seller arising from the sale.'").

Pursuant to both section 302(9) of New York Personal Property Law and the Holder Rule, Suzuki may be held liable for Plaintiff's fraud and false advertising claims based on fraud and false advertising allegedly committed by Planet. *See Diaz*, 424 F. Supp. 2d at 544 (holding that pursuant to the Holder Rule a car financer could be liable as an assignee for deceptive sales practices allegedly committed by the car dealership); *Ramirez*, 938 N.Y.S.2d at 283 (holding that pursuant to the Holder Rule and section 302(9), a car financer could be liable as an assignee for fraud allegedly committed by the car dealership). Accordingly, the Court denies Suzuki's motion for summary judgment as to Plaintiff's state law claims.[12]

---

[12] In its reply brief, Suzuki argues for the first time, without any legal support, that Plaintiff's fraud claim is "duplicitous" of her TILA claim because both claims are based on the same misleading statements. (*See* Suzuki Reply 4.) Suzuki did not make this argument in its initial brief in support of its motion for summary judgment and cannot do so in its reply brief. *See, e.g.*, *United States v. Pepin*, 514 F.3d 193, 203 n.13 (2d Cir. 2008) (noting that courts "generally do not consider issues raised in a reply brief for the first time" because the opposing party "may not have an adequate opportunity to respond to it" (quoting *In re Harris*, 464 F.3d 263, 268–69 n.3 (2d Cir. 2006))); *In re Harris*, 464 F.3d at 268–69 n.3 (2d Cir. 2006) (same (first citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); and then citing *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001))); *Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 438 n.4 (2d Cir. 2004) (declining to address argument first raised in a reply brief because the opposing party "may not have an adequate opportunity to respond to it" (quoting *Mitchell v. Fishbein*, 377 F.3d 157, 164 (2d Cir. 2004))); *Mitchell*, 377 F.3d at 164–65 (same (collecting cases)); *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015) (refusing to consider an argument raised for the first time in a reply brief and stating that "the Court will not evaluate arguments that are so drastically underdeveloped" (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 110 (2d Cir. 2000)). Even if this argument was properly before the Court, it would not support dismissal of either claim since the Second Circuit, several district courts and the New York Court of Appeals have recognized that a plaintiff may bring both claims. *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 491–92 (2d Cir. 2014) (permitting the plaintiff to assert both TILA and fraud claims based on the same transaction); *Vincent v. Money Store*, 402 F. Supp. 2d 501, 504 (S.D.N.Y. 2005) (same); *Vaughn v. Consumer Home Mortgage, Inc.*, No. 01-CV-7937, 2003 WL 21241669, at *1 (E.D.N.Y. Mar. 23, 2003) (same); *see also People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 109 (2008) (holding that TILA did not preempt state law fraud claims).

**III. Conclusion**

For the foregoing reasons, the Court denies Suzuki's motion for summary judgment as to Plaintiff's TILA claim as it relates to the Theft Deterrent Certificate and the Warranty Application and Plaintiff's state law claims. The Court grants Suzuki's motion for summary judgment as to Plaintiff's MMWA claim.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: June 21, 2016
       Brooklyn, New York